*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREGG A. ECKER and SCOTT M. ECKER,

Plaintiffs-Appellees,

v

KAREN S. ECKER NICKEL and KIM J. MARTINCHEK,

Defendants-Appellants.

FOR PUBLICATION
July 14, 2026
1:33 PM

No. 366482
Emmet Probate Court
LC No. 20-014058-CZ

Before: ACKERMAN, P.J., and REDFORD and FEENEY, JJ.

ACKERMAN, P.J.

This appeal arises from a dispute among siblings over the administration of a trust established by their parents. Defendant-appellant Karen Nickel once served as the trustee, but after plaintiffs-appellees Gregg and Scott Ecker filed this civil action challenging her administration of the trust, Nickel defaulted, and the probate court removed her as trustee. The court also declared an unsigned purported amendment to the trust invalid, ordered an inventory and accounting, and later resolved disputes over Nickel's claims against the trust, rent, and attorney fees. Nickel now appeals these rulings.

The threshold issue concerns jurisdiction. Plaintiffs commenced this matter as a civil action by filing a complaint, rather than as a probate proceeding initiated by a petition. That error matters, but not in the way either party suggests. Plaintiffs contend that we lack jurisdiction to review Nickel's challenge to her removal as trustee because the order removing her was a final order appealable of right and her current appeal is therefore untimely. Nickel, by contrast, contends that the improper form of the action deprived the probate court of subject-matter jurisdiction.

We conclude that the case was filed in the wrong form, but that the error was procedural rather than jurisdictional. Because the case proceeded as a civil action, the definition of a final order in MCR 5.801(A)(2), which applies to proceedings, did not apply, and the order removing Nickel as trustee was not immediately appealable of right. This Court may therefore review that order in this appeal from the later final judgment. We further conclude that the improper form of

-1-

the action did not deprive the probate court of subject-matter jurisdiction or deny Nickel due process. On the remaining issues, we discern no error requiring reversal. We therefore affirm.

## I. BACKGROUND

The parties are siblings and the beneficiaries of the Mark L. Ecker Trust, which was created in 2010 and named Nickel as successor trustee. Under the terms of the Trust, Gregg's share of the distributions was to be reduced because of gifts the parties' parents made to him during their lifetimes. In 2016, however, a purported "First Amendment" to the Trust was prepared. The First Amendment provided that the reduction of distributions to Gregg should be deleted from the Trust. Mark never signed the First Amendment before his death in 2019.

Nickel asserted that the First Amendment had been drafted at Mark's direction by his attorney, but she provided no independent evidence that Mark had any involvement in it. Instead, the signature lines on the amendatory document stated "see attached," and attached to the document was a writing that Nickel and codefendant Kim Martinchek created months after Mark's death. In that writing, Nickel and Martinchek recited their beliefs about Mark's wishes and their intention to abide by those wishes.

After Mark's death, plaintiffs became concerned about Nickel's administration of the Trust, including her refusals to provide information and the questionable provenance of the First Amendment. Following extensive correspondence between Nickel and plaintiffs' attorney, plaintiffs filed the complaint in this matter. They sought a declaratory judgment regarding the validity of the First Amendment, removal of Nickel as trustee, and an order requiring Nickel to provide an inventory and accounting. Although plaintiffs' attorney informed Nickel about the complaint two weeks before it was filed, and although Nickel received personal service of the complaint, she chose not to respond. Nickel later explained that she hoped to resolve the matter out of court.

A default was entered against Nickel. Thereafter, over her vigorous protests, the probate court entered a partial default judgment removing Nickel as trustee, declaring the First Amendment invalid, and requiring Nickel to provide an inventory and an accounting. Nickel repeatedly failed to provide the required inventory and accounting despite receiving multiple extensions, and the probate court ultimately held her in contempt.

Nickel's response to the request for an inventory and accounting prompted plaintiffs to raise additional concerns. In particular, plaintiffs asserted that Nickel had continued to occupy the home owned by the Trust, where she had resided with the parties' parents during the last few years of their lives, without paying rent. Plaintiffs maintained that this was contrary to the Trust, which required the home to be held for the benefit of all the siblings. Nickel, in addition to repeatedly seeking reinstatement as trustee, filed claims against the Trust for caregiving services she provided to the parties' parents during their lifetimes, fiduciary services she provided to the parents and the Trust, and legal expenses.

Following a bench trial, the probate court allowed some of Nickel's claims, denied others, and required Nickel to repay the Trust for certain overpayments she had received. The parties agreed that Nickel could remain in the home if she paid rent, and the probate court ordered Nickel

to pay rent at the full fair market value rate and to pay back rent beginning 60 days after Mark's death. This appeal followed.[1]

## II. FORM OF ACTION AND JURISDICTION

A dispute over whether this action was brought in the proper form underlies the parties' competing jurisdictional arguments. Plaintiffs challenge this Court's jurisdiction to entertain defendant's appeal. Defendant, by contrast, argues that plaintiffs filed this matter in the wrong form in the probate court and that this defect deprived the probate court of jurisdiction. "Whether this Court has jurisdiction to hear an appeal is always within the scope of this Court's review." *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). A "challenge to [the trial court's] subject-matter jurisdiction may be raised at any time." *Smith v Smith*, 218 Mich App 727, 729-730; 555 NW2d 271 (1996). We agree that this matter was filed in the wrong form, but we conclude that this Court has jurisdiction over this appeal and that the improper form in the trial court was a nonjurisdictional error.

## A. FORM OF ACTION

Under MCR 5.101(A), there are two forms of action in probate court: a "proceeding" and a "civil action." A proceeding is commenced by filing a petition, MCR 5.101(B), while a civil action is commenced by filing a complaint and is litigated under the rules applicable to civil actions, MCR 5.101(C). The option to file a civil action in probate court "was created after the Legislature amended the [Revised Probate Code] in 1989 to expand the probate court's jurisdiction to include concurrent jurisdiction with the circuit court over [some] civil claims." *In re Gordon Estate*, 222 Mich App 148, 154; 564 NW2d 497 (1997).

The distinction between civil actions and proceedings is not mere formalism. The procedures for civil actions, set out in chapter 2 of the Michigan Court Rules, are suited to closed disputes between inherently adverse parties. The procedures for proceedings, set out in chapter 5, are adapted for the open-ended matters within the probate court's jurisdiction—such as trust administration—in which interested persons may appear and raise concerns with the court.

This case falls into the latter category. Plaintiffs invoked the probate court's jurisdiction over "[a] proceeding involving a trust," which "may relate to any matter involving the trust's administration" and under which the court may "[a]ppoint or remove a trustee," "[r]eview the fees of a trustee," "[r]equire, hear, and settle interim or final accounts," and "[d]etermine a question that arises in the administration or distribution of a trust." MCL 700.7201(3)(a)-(c), (e). See also MCL 700.7203(1); 700.1302(b)(*i*)-(*iii*), (*v*). Although § 7201(1) refers to such a matter as a "proceeding[]," that word choice is not dispositive because the Estates and Protected Individuals Code, MCL 700.1101 *et seq*., provides that, as used in the statute, a "proceeding" "may be an

---

[1] Although nominally listed in the caption as a defendant-appellant, Martinchek's involvement in this appeal has apparently been limited to an affidavit she submitted concurring in a motion for peremptory reversal filed by Nickel, which this Court denied. The briefs filed by Nickel on appeal have been signed only by Nickel and were apparently submitted only on her own behalf. All subsequent references to "defendant" refer to Nickel.

action at law or a suit in equity" and "may be denominated a civil action under court rules." MCL 700.1106(u). But MCL 700.7208 specifically provides that a "proceeding under section 7203 is initiated by filing a petition." Consistent with that statute, MCR 5.501(C) provides that "[a] proceeding concerning a trust is commenced by filing a petition in the court." Under MCL 700.7208 and MCR 5.501(C), this matter should have been initiated by petition and therefore should have commenced as a "proceeding" under MCR 5.101(B). See *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 356 n 12; 833 NW2d 384 (2013) ("It is true that a trust proceeding, such as this, is not a 'civil action'.").

## B. THIS COURT'S JURISDICTION

Plaintiffs argue that defendant cannot now challenge her removal as trustee because she was removed by an order that was appealable by right, and the time to appeal that order has expired. We conclude that, because this case proceeded in the wrong form, the order removing defendant as trustee was not appealable by right when entered and is therefore reviewable in this appeal.

This Court has "jurisdiction on appeals from all final judgments and final orders from the . . . probate court, as those terms are defined by law and supreme court rule." MCL 600.308(1). In an appeal from a final order, an appellant may challenge earlier nonfinal orders entered in the same case. *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009). But "[a] party cannot wait until the entry of a subsequent final order to untimely appeal an earlier final order." *Surman v Surman*, 277 Mich App 287, 293-294; 745 NW2d 802 (2007).

Plaintiffs argue that the order removing defendant as trustee was a final order under MCR 5.801(A)(2)(a), which provides that an order "removing a fiduciary" is "a final order affecting the rights or interests of an interested person in a proceeding involving . . . an inter vivos trust." Because a trustee is a fiduciary, MCL 700.1104(e), plaintiffs argue that MCR 5.801(A)(2)(a) gave defendant an appeal of right from the November 2020 order removing her as trustee. Because defendant did not timely appeal that order, plaintiffs contend that further review is now precluded.

Plaintiffs' argument overlooks that the definition of final order on which they rely applies to "a final order affecting the rights or interests of an interested person *in a proceeding*." MCR 5.801(A)(2) (emphasis added). This case is not a proceeding. It is "a civil action commenced in the probate court under MCR 5.101(C)," meaning this Court has jurisdiction over "a final order, as defined in MCR 7.202(6)(a), affecting the rights or interests of a party to" such an action. MCR 5.801(A)(1).

The probate court did not finally resolve the ongoing dispute over the inventory and accounting that defendant had been ordered to provide until the May 2023 judgment from which defendant now appeals. That judgment was "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties." MCR 7.202(6)(a)(i). It was therefore the final order in this civil action. Under *Green*, defendant may challenge earlier nonfinal orders in this appeal, including the November 2020 order removing her as trustee. We therefore have jurisdiction over this appeal.

-4-

## C.  THE PROBATE COURT'S JURISDICTION

Defendant argues that the probate court lacked subject-matter jurisdiction because plaintiffs improperly brought this matter as a civil action rather than as a proceeding.  We disagree.  "Subject-matter jurisdiction is a legal term of art that concerns a court's authority to hear and determine a case," and it depends "on the character or class of the case pending," not "the particular facts of the case."  *People v Washington*, 508 Mich 107, 121; 972 NW2d 767 (2021) (cleaned up).  Subject-matter jurisdiction turns on the nature of the claim, not on how the claim is phrased or presented.  *Parkwood Ltd Dividend Housing Ass'n v State Housing Dev Auth*, 468 Mich 763, 774 n 8; 664 NW2d 185 (2003).  No matter how grave the error or irregularity in a proceeding, if the court had "general jurisdiction of the cause and the person," the error is merely "error in the exercise of jurisdiction."  *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538, 545-546; 260 NW 908 (1935).

Notoriously, the English-speaking world's legal system was once dominated by forms of action.  Prior generations of lawyers had to select from among forms such as assumpsit, trover, replevin, detinue, trespass, and ejectment, and determine how best to fit a client's grievance into one of those recognized forms.[2]  Michigan's first major reform of that system came with the original Judicature Act, which retained certain listed forms of action and abolished all others.  1915 PA 314, ch 11, § 1.  This compromise drew criticism as both meaningless and illogical.  See Sunderland, *The Michigan Judicature Act of 1915, Part II: Forms of Action*, 14 Mich L Rev 383, 384-387 (1916).  The total abolition of the forms of action was not completed until 1963, with the adoption of the General Court Rules, when "[t]he forms of action formerly existing in Michigan procedure were abolished by GCR 1963, 110.3."  *Seaboard Fin Co v Barnes*, 378 Mich 627, 632; 148 NW2d 756 (1967).  They were replaced by "1 form of action to be known as a 'Civil Action'."  GCR 1963, 12.

In 1972, the Probate Court Rules effected a similar consolidation in probate court, providing that there was to be "one form of action to be known as a 'proceeding' " and that such a proceeding was "commenced by filing a petition with the court."   PCR 12 & 101.1.

---

[2] As one celebrated historian described the process:

> Let it be granted that one man has been wronged by another; the first thing that he or his advisors have to consider is what form of action he shall bring.  It is not enough that in some way or another he should compel his adversary to appear in court and should then state in the words that naturally occur to him the facts on which he relies and the remedy to which he thinks himself entitled.  No, English law knows a certain number of forms of action, each with its own uncouth name, a writ of right, an assize of novel disseisin or of *mort d'ancestor*, a writ of entry *sur disseisin* in the *per* and *cui*, a writ of *besaiel*, of *quare impedit*, an action of covenant, debt, detinue, replevin, trespass, assumpsit, ejectment, case.  This choice is not merely a choice between a number of queer technical terms, it is a choice between methods of procedure adapted to cases of different kinds.  [Maitland, *The Forms of Action at Common Law* (Chaytor & Whittaker eds) (Cambridge: University Press, 1971), pp 1-2.]

Contemporaneous commentary expressly linked the choice of a single term for all probate court matters with the earlier adoption of a single "civil action." See PCR 12, 388 Mich xlvii, xlvii (note) ("The term 'proceeding' is substituted for the term 'action' appearing in the General Court Rules. Although described by Webster's dictionary synonymously, 'proceeding' is considered more consistent with common usage and the nature of matters heard or tried.").

Since 1985, the Michigan Court Rules have preserved that arrangement. We continue to operate under the familiar rule that "[t]here is one form of action known as a 'civil action,'" which is "commenced by filing a complaint with a court." MCR 2.101(A)-(B). As originally adopted, the 1985 rules likewise provided that, in probate court, "[t]here [was] one form of action known as a 'proceeding,'" which was "commenced by filing a petition with the court." MCR 5.101(A)-(B), as adopted August 1, 1984, 419A Mich 301 (1984). But the probate court's jurisdiction was later expanded to include certain civil actions. 1989 PA 69. See *Gordon Estate*, 222 Mich App at 154. "To fill the breach, the Supreme Court amended the probate court rules in 1992 in recognition of the probate court's expanded jurisdiction." *Id*. See also MCR 5.101, 439 Mich clxii, clxiii (comment). That amendment reintroduced distinct forms of action—civil actions and proceedings—into probate practice and procedure.

Defendant contends that this defect in form is jurisdictional. We are not persuaded. After the substantial 1915 reforms to the system of forms of action, Michigan courts did not treat defects in form as jurisdictional. For example, when a plaintiff initially pleaded an action of trespass on the case and was denied an opportunity to amend the action to assumpsit, the Supreme Court held that "[i]t was reversible error to deny plaintiff this privilege." *Gratiot Lumber & Coal Co v Lubinski*, 309 Mich 662, 666, 670; 16 NW2d 112 (1944). The recognized forms of action were functional, not jurisdictional. Thus, the Supreme Court explained that "[t]he purpose of both trespass on the case and assumpsit [was] to recover damages only," meaning "[t]here [was] no reason why counts in each should not be joined." *Brewster Loud Lumber Co v Gen Builders' Supply Co*, 233 Mich 633, 639; 208 NW 28 (1926). By contrast, because "[r]eplevin [was] a special action to recover possession of property," "the claims it present[ed] [were] widely contradictory and inconsistent with the theory of either of the other actions." *Id*.

Here, the relief plaintiffs sought was the same regardless of how their initiating document was titled: removal of defendant as trustee and an inventory and accounting of the Trust's assets. Those matters fall squarely within the probate court's subject-matter jurisdiction. MCL 700.7203(1). "When a verdict has been rendered in a cause, the judgment thereon shall not be . . . reversed, impaired, or in any way affected, by reason of . . . mispleading" or "negligence of . . . the parties, or their counselors or attorneys, by which neither party shall have been prejudiced." MCL 600.2315(1), (11). Therefore, unless the defect in form affected defendant's substantial rights, it should be disregarded; as between these parties, the error was harmless. And this Court has previously held that MCR 5.101 does "not touch upon substantive or jurisdictional issues" but instead governs procedure. *Gordon Estate*, 222 Mich App at 155. Commencing this matter in the wrong form was therefore a procedural defect, not a jurisdictional one. *Id*. at 155-156. The probate court did not lack jurisdiction.

## III. REMOVAL AS TRUSTEE

Defendant next argues that her removal as trustee violated due process and failed to satisfy the statutory requirements for removal. This Court reviews de novo questions of statutory interpretation and whether a party received due process. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277-278; 831 NW2d 204 (2013). "Court rules are also interpreted de novo." *Carter v DTN Mgt Co*, 515 Mich 61, 73; 28 NW3d 291 (2024). This Court reviews for an abuse of discretion a trial court's decision to enter a default, *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003), a trial court's decision whether to set aside a default or a default judgment, *Tindle v Legend Health, PLLC*, 346 Mich App 468, 474; 12 NW3d 667 (2023), "a probate court's appointment or removal of a fiduciary," *In re Bittner Conservatorship*, 312 Mich App 227, 235; 879 NW2d 269 (2015), and a trial court's decision on a motion for relief from judgment or for reconsideration, *In re Ingham Co Treasurer Petition for Foreclosure*, 331 Mich App 74, 77; 951 NW2d 85 (2020). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes" or when the court "makes an error of law." *In re Ingham Co Treasurer*, 331 Mich App at 77-78 (cleaned up).

## A. DUE PROCESS

Defendant argues that the improper form of this case deprived her of due process. Although the procedures would have differed had this matter been commenced as a proceeding, the record establishes that those procedural differences would not have affected defendant's opportunity to respond.

"Due process is a flexible concept, the essence of which requires fundamental fairness" and, minimally, reasonable notice and a meaningful opportunity to be heard before a person is deprived of life, liberty, or property. *Branch v Rudolph*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368071); slip op at 8 (cleaned up). But "[d]ue process protects only the opportunity to be heard after reasonable notice; it does not consider whether a party seized the opportunity provided." *Id*. at ___; slip op at 9.

The gravamen of defendant's argument is that, had this matter been properly commenced by petition, she could not have been defaulted. It is true that, under MCL 700.7202(1), "[n]otice of a proceeding shall be given to the trustee in accordance with section 1401." And MCL 700.1401(1), in turn, sets out various statutory methods for achieving that notice. "An interested person may object to a pending petition orally at the hearing or by filing and serving a document" satisfying the rules governing the contents of a petition. MCR 5.119(B). Because a trustee is an "interested person," MCR 5.125(C)(6)(g), (32)(e), defendant maintains that she was deprived of an opportunity to use this simple procedure to object to plaintiffs' allegations.

But it does not follow that defendant could not have been defaulted, or subjected to the functional equivalent of a default, had plaintiffs filed this matter as a proceeding. In that circumstance, the probate court could have proceeded under MCR 5.104(C), which provides, subject to exceptions not relevant here, that "[i]f a petition is unopposed at the time set for the hearing, the court may either grant the petition on the basis of the recitations in the petition or conduct a hearing." Defendant knew about this case two weeks before the complaint was filed, received personal service of the complaint, and, as stated in her motion for reconsideration in the

-7-

trial court, chose not to "answer the Complaint because [she] believed that the family would be able to reach an agreement outside of court." In short, defendant *had* a meaningful opportunity to answer the allegations against her and chose to forgo it. She does not explain how she would have acted differently had she received a petition rather than a complaint; and in any event, having received a complaint, she was on notice.[3] Due process is not offended when a party receives notice and an opportunity to be heard but elects not to participate.

## B. GROUNDS FOR REMOVAL

Defendant also challenges the probate court's rationale for removing her as trustee. She contends that the court removed her "by Default alone" and failed to find a statutory basis for removal under MCL 700.7706(2). We conclude that defendant misunderstands the effect of a default and that the probate court did not err by removing her.

A trustee may be removed only for one of the reasons enumerated in MCL 700.7706(2). See *In re Pollack Trust*, 309 Mich App 125, 163; 867 NW2d 884 (2015). Those grounds include "a serious breach of trust," MCL 700.7706(2)(a), and "unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively," MCL 700.7706(2)(c). Defendant argues that none of those grounds was established because she was removed solely as a consequence of her default. But when a party fails to respond to a complaint and a default is entered, the "default settles the question of liability as to well-pleaded allegations and precludes the defaulting party from litigating that issue." *Wood v DAIIE*, 413 Mich 573, 578; 321 NW2d 653 (1982). Defendant's failure to respond therefore operated as an admission of the well-pleaded factual allegations in the complaint.

To be sure, a trial court must still determine the legal significance of the facts alleged. See *State ex rel Saginaw Prosecuting Attorney v Bobenal Investments, Inc*, 111 Mich App 16, 22; 314 NW2d 512 (1981) ("[E]ntry of a default does not operate as an admission that the complaint states a cause of action."). The probate court did so here. The complaint alleged that defendant failed to provide required accountings or inventories, attempted to amend the Trust without authority, and refused plaintiffs' requests for information. Those allegations established violations of defendant's duties to refrain from self-dealing, MCL 700.7802(1); to "keep adequate records of the administration of the trust," MCL 700.7811(1); to "keep the qualified trust beneficiaries reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests"; and to "promptly respond to a trust beneficiary's request for information related to the administration of the trust," MCL 700.7814(1).

The probate court also properly found that defendant's treatment of the First Amendment constituted a serious breach of trust. After the probate court denied defendant's motion to set aside the default judgment, defendant asserted in her motion for reconsideration that "[t]here was no

---

[3] Although challenging to follow, defendant appears to suggest that plaintiffs intentionally commenced this case as a civil action to avail themselves of procedures or remedies that would not have been available to them in a proceeding. But the functional equivalent of a default would still have been available in response to defendant's nonparticipation, and the record contains no indication that plaintiffs, or anyone else, were aware of the procedural mistake.

actual amendment to the trust[] filed." She instead claimed that she and Martinchek had "signed an agreement that they would abide by an amendment that had been drafted by [Mark's] attorney at his direction, but which was never signed because [Mark's] mental state deteriorated prior to having an opportunity to sign it." That was an admission that defendant intended to comply with Mark's purported wishes *contrary to the Trust's written directives*. For practical purposes, that amounted to an attempted amendment of the Trust after it became irrevocable. It also violated defendant's obligation to "administer the trust . . . *in accordance with its terms and purposes*." MCL 700.7801 (emphasis added). Because "one must look to the trust instrument to determine . . . the settlor's intent regarding the purpose of the trust's creation and its operation," *In re Butterfield Estate*, 418 Mich 241, 259; 341 NW2d 453 (1983), the Trust's terms control, not defendant's asserted understanding of her father's wishes when those asserted wishes contradict the Trust's terms.

Under MCL 700.7901(1), "[a] violation by a trustee of a duty the trustee owes to a trust beneficiary is a breach of trust." A trustee's violation of the duties imposed by MCL 700.7801 *et seq*. therefore may constitute "a serious breach of trust" under MCL 700.7706(2)(a). It could also reflect "unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively" under MCL 700.7706(2)(c). The probate court therefore did not err by removing defendant as trustee.

To the extent defendant avers that hostility among beneficiaries is an insufficient basis for removing a trustee, the record does not show that the probate court relied on any hostility by plaintiffs. The court instead removed defendant on the basis of admitted allegations establishing breaches of her fiduciary duties. The probate court therefore removed defendant for at least one ground enumerated in MCL 700.7706(2), and defendant has not shown any error requiring reversal.

## IV. DEFENDANT'S CHARGES AGAINST THE TRUST

Defendant next challenges the probate court's denial of several charges she asserted against the Trust. This Court reviews a probate court's dispositional rulings for an abuse of discretion but reviews the court's underlying factual findings for clear error. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). Discretionary rulings include surcharging a trustee, *In re Baldwin Trust*, 274 Mich App 387, 397; 733 NW2d 419 (2007), and determining compensation for a trustee, *In re Baird Estate*, 137 Mich App 634, 637; 357 NW2d 912 (1984). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Ledee*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 371631); slip op at 7 (citation omitted). This Court reviews de novo the interpretation of a trust agreement and must ascertain and give effect to the settlor's intent as expressed in the plain and unambiguous language of the trust. *Brown Trust v Garcia*, 312 Mich App 684, 693-694; 880 NW2d 269 (2015). "Although equity cases are themselves reviewed de novo, as are the applicability and interpretation of equitable doctrines, the propriety of the actual relief granted by the trial court is strictly discretionary and depends on the facts of the particular case." *Davis v Secretary of State*, 346 Mich App 445, 459; 12 NW3d 653 (2023).

## A. EQUITABLE OR EQUAL TREATMENT

One premise underlying defendant's arguments is that the parties' parents intended to provide her special compensation to make her "equal" to her three siblings, each of whom received a substantial gift of land or money during Mark's lifetime. But the Trust contains no such provision. Courts must enforce the plain and unambiguous language of the Trust. *Brown Trust*, 312 Mich App at 693-694. Defendant's assertions about her parents' intentions are generally irrelevant and may not be considered unless she first establishes that the Trust language is ambiguous. *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985). We find no ambiguity.

Defendant relies on a Trust provision reciting Mark's "intent that the use of the Property shall in general follow the use which was made of it during my lifetime subject, of course, to future change in conditions that I could not foresee." Defendant argues that the use of the property during Mark's lifetime included her living there rent-free and that continuing that arrangement would effectively equalize the gifts made to the other siblings. But that interpretation conflicts with the same Trust section, which requires the property to be held for Mark's "immediate family" and provides that joint or single occupancy by immediate family members is to be determined by majority vote of the siblings. The probate court reasoned that the general use of the property during Mark's lifetime was as a single-family residence, which better comports with the remaining provisions of the Trust. That interpretation also better accords with the fact that the Trust was executed in 2010, by which time defendant had lived with the parties' parents for only a couple of years. The probate court's finding was not clearly erroneous.

Defendant argues that, had the parents intended to treat her differently from her siblings, they would have said so. But defendant conflates equal treatment *under the Trust* with equal treatment *during the parents' lifetimes*. The parents were entitled to make gifts to any of their children as they wished, and they apparently exercised that right by making gifts to the other siblings. The parents included language in the Trust to account for one of those gifts by reducing Gregg's share of distributions. They could have included similar language reducing Martinchek's and Scott's shares, but they did not. Nor did they include any provision giving defendant special compensatory treatment. The probate court therefore treated defendant equally under the Trust. Even if the omission reflected an oversight by the parents, defendant, as trustee, was not entitled to disregard the Trust's language to correct that perceived oversight after the fact.

Defendant also appears to argue that the Trust's First Amendment shows that Mark intended to compensate her in some way. But defendant provided no evidence that the First Amendment was drafted at Mark's direction, and the probate court found defendant not credible. This Court defers to that credibility assessment. *In re BWJ*, 346 Mich App 183, 188; 12 NW3d 14 (2023). In any event, the First Amendment's plain language merely repeated the Trust's statement that "[i]t is my intent that the use of the Farm Property shall in general follow the use which was made of it during my lifetime subject, of course, to future change in conditions that I could not foresee." Thus, even assuming Mark authorized the First Amendment, nothing in its language supports defendant's interpretation.

Although courts of equity may interfere with or modify trusts in rare circumstances, those circumstances generally involve unforeseen exigencies requiring protection of all beneficiaries or

-10-

making the trust's objectives impossible or pointless to carry out. *George v Haber*, 343 Mich 218, 225-229; 72 NW2d 121 (1955). There is no credible evidence of any such exigency here. The probate court did not err.

## B. CHARGES AGAINST THE TRUST

A trustee is generally entitled to charge reasonable expenses, including legal expenses, against the trust. *In re Temple Trust*, 278 Mich App 122, 134-137; 748 NW2d 265 (2008). The Trust authorizes the trustee to pay "legal claims against" the estate, and MCL 700.7817(dd) authorizes trustees to pay "a claim of or against the trust, including a claim against the trust by the trustee." As the probate court recognized, no party disputed that defendant provided some fiduciary and personal care services during the last years of the parents' lives or that she should receive some compensation for those services.

But defendant, as claimant, bore the burden of proving entitlement to the claims she asserted against the Trust. A claimant's "failure to present records concerning [the] services is usually weighed against" the claimant. *Comerica Bank v City of Adrian*, 179 Mich App 712, 724; 446 NW2d 553 (1989). A trial court should not disallow a claim solely because it is undocumented, but the court may consider the failure to present available records, and a claimant may fill evidentiary gaps with expert testimony. *Id*. at 724-725.

Defendant provided no documentation, admitted that she kept no logs or records of services rendered, admitted that some portion of her time was necessarily spent caring for her disabled husband, who also lived in the home, and offered no expert testimony concerning reasonable compensation. On this record, the probate court did not clearly err by finding that defendant's claims were exaggerated and inadequately documented.

The probate court also denied defendant's claims for additional reasons, most of which need not be addressed given her failure to carry her burden of proof. We do, however, correct one misapprehension. Defendant contends that she could not have manufactured her claim for caregiving services in response to plaintiffs' demand that she vacate the home because she submitted her claim nearly a year before plaintiffs formally moved for her removal from the home. That chronology is accurate as far as it goes, but it is incomplete. Plaintiffs expressed concern that defendant was improperly occupying the home exclusively almost two months before she submitted her claim.

The probate court also properly found that defendant failed to rebut the presumption that services rendered to her parents were gratuitous. *Pupaza v Laity*, 268 Mich 250, 252; 256 NW 328 (1934); *Deschane v Klug*, 344 Mich App 744, 754; 2 NW3d 131 (2022). As the probate court found, defendant conceded that she simply did not think about getting paid. The court therefore did not clearly err by finding that defendant both failed to document her services adequately and failed to overcome the presumption that the services she provided to her parents were gratuitous.

## C. MISFEASANCE OR MALFEASANCE

Defendant finally disputes the probate court's findings that she committed breaches of trust or engaged in misfeasance or malfeasance. Her arguments focus on immaterial or minor details and mischaracterize the record.

Under MCL 700.7904(3), a "court may reduce or deny a trustee's claim for compensation, expenses, or disbursements with respect to a breach of trust." As already discussed, trustees owe multiple duties to trust beneficiaries. These include duties to (1) "administer the trust solely in the interests of the trust beneficiaries," MCL 700.7802(1); (2) refrain from self-dealing, MCL 700.7802(2); (3) "act as would a prudent person in dealing with the property of another," MCL 700.7803; (4) "take reasonable steps to take control of and protect the trust property," MCL 700.7810; (5) "keep adequate records of the administration of the trust" and "keep trust property separate from the trustee's own property," MCL 700.7811(1) and (2); and (6) "keep the qualified trust beneficiaries reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests," as well as "promptly respond to a trust beneficiary's request for information related to the administration of the trust," MCL 700.7814(1).

Defendant interprets the Trust as granting her exclusive, rent-free use of the home to compensate her for distributions the parents made to her siblings. Under MCL 700.7906, a "trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a trust beneficiary for a breach of trust to the extent the breach resulted from the reliance." Similarly, the Trust grants the trustee "the authority to reasonably construe the provisions of this Trust." But a person generally may not fabricate an ambiguity or exploit a "patently unreasonable interpretation of" an ambiguity. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 208 n 8; 476 NW2d 392 (1991) (cleaned up).

Nothing in the Trust reasonably supports defendant's interpretation. Defendant's exclusive use of the Trust property and treatment of the home as "her home" violated her duty to administer the Trust in the interests of the beneficiaries, MCL 700.7802(1), to refrain from self-dealing, MCL 700.7802(2), and to keep Trust property separate from her own property, MCL 700.7811(2). Defendant cannot rely on the statutory safe harbor or the Trust's safe-harbor provision because her interpretation of the Trust was unreasonable.

Additionally, defendant's refusal to keep plaintiffs informed and to respond to their requests for information, MCL 700.7814(1), violated her duties as trustee *and* directly caused this litigation. Her failure to keep adequate records, MCL 700.7811(1), caused the parties and the Trust to expend significant resources. The probate court therefore did not clearly err by finding that defendant committed breaches of trust warranting denial or reduction of her claims under MCL 700.7904(3).

## V. RENT

Defendant next argues that plaintiffs should have been barred from seeking rent for her use of the property because they did not plead the issue of rent and therefore could not have obtained discovery regarding it. But defendant stipulated to the admission of expert evidence regarding the residence's fair-market rental value and therefore waived any evidentiary challenge to that evidence.[4] See *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001) ("A party cannot stipulate a matter and then argue on appeal that the resultant action was error."). Likewise, although defendant disputed the amount of rent she could be charged and expressed the view that

---

[4] Defendant cites MCR 5.131(B)(3), but that rule governs discovery, not admissibility.

the Trust "doesn't require a family member to pay rent," she affirmatively testified that she was amenable to paying rent. A party waives a matter by affirmatively assenting to it, and a party may not take a position on appeal contrary to the position taken below. *K2 Retail Constr Servs, Inc v West Lansing Retail Dev, LLC*, ___ Mich App ___, ___ n 12; ___ NW3d ___ (2025) (Docket No. 367762); slip op at 14 n 12. Defendant did not challenge plaintiffs' ability to seek rent until after she had waived the issue.

Defendant also argues that the Trust does not permit family members to be charged rent. We disagree with that interpretation. But even accepting it for the sake of argument, defendant fails to appreciate that she was charged rent for her *exclusive* use of the residence, not merely for using the residence. Scott emphasized at trial that charging defendant rent to remain in the residence was one possible way to "shar[e] the use of the home." Another option was for each sibling to live in the home rent-free on a rotating basis for four years, because defendant had already exclusively occupied the residence for that length of time.

The Trust provides that the property was to be held "in trust for my immediate family and the Trustees shall arrange for the joint and/or single occupancy of the dwelling(s) on the Property from time to time by such of my immediate family and for such period of time and in such manner as determined by the vote of a majority of my children then living." But no such vote occurred. Instead, while serving as trustee, defendant arranged for herself to have exclusive use of the property. As the probate court correctly found, defendant breached her duties and engaged in self-dealing by keeping the residence for herself, contrary to the Trust's clear mandate that the residence was for the benefit of *all* the siblings as determined by majority vote.

Defendant again contends that her rent-free occupancy comports with Mark's wish that the home continue to be used as it had been during his lifetime. But during Mark's lifetime, defendant lived there rent-free only while caring for her parents; she never occupied the residence exclusively during their lifetimes. Moreover, defendant focuses only on the last few years of Mark's life, most of which occurred after the Trust was drafted. Nothing in the Trust reasonably supports defendant's asserted right to continue exclusively occupying the property rent-free.

Defendant offers no discernible argument regarding back rent. The record appears to reflect that her parents' records were voluminous and disorganized, and that she had no other habitable home into which she could immediately move. But those circumstances do not explain why she could not have hired an accountant, as plaintiffs suggested, especially given her admissions that her accounting "took forever" and contained mistakes because she was "not an accountant." The probate court also credited defendant with 60 days as a reasonable period to find alternative living arrangements. The probate court did not clearly err.

## VI. ATTORNEY FEES AND LEGAL EXPENSES

Finally, defendant argues that the probate court erred by denying the attorney fees she incurred after her removal as trustee. She contends that the court denied those fees merely because she had been removed, even though the expenses related to her role as trustee because they involved completing court-ordered inventories and accounts and defending against plaintiffs' objections. Defendant is correct that a former trustee may remain entitled to "attorney fees and other expenses incidental to the allowance of the trustee's accounts." MCL 700.7813(2). But her

-13-

argument depends on her subjective belief that plaintiffs' objections to the completeness, accuracy, and adequacy of her inventories and accounts were essentially frivolous. The probate court did not clearly err by rejecting that characterization.

Defendant also relies on a portion of the administrative provisions attached to the Trust for the proposition that a trustee is absolutely entitled to indemnification when sued on behalf of a beneficiary. But defendant quotes only part of that provision. The provision does provide for indemnification of the trustee, but not when the "Trustee's own willful default or intentional misconduct or gross negligence" is "established by clear and convincing evidence." The probate court did not use those precise words, but the court plainly found that defendant had committed intentional misconduct at a minimum. We find no error in the probate court's refusal to award defendant all of her requested attorney fees.

Defendant next argues that the probate court erroneously awarded attorney fees to plaintiffs because it failed to recognize that she was entitled to attorney fees. But the probate court *did* award attorney fees in the same amount it awarded to plaintiffs. Under MCL 700.7904(1), the probate court had discretion to award attorney fees to a party whose efforts protected or enhanced trust property, including by correcting trustee misconduct in a manner that enhanced or preserved the trust as a whole. *In re Ashcraft Trust*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 372846); slip op at 3-5.

Defendant maintains that this litigation was unnecessary because she offered to disregard the First Amendment. That mischaracterizes her "offer." Defendant offered only to disregard the First Amendment's deletion of the reduction to Gregg's share of distributions, while simultaneously stating her intent to comply with the rest of the First Amendment and impliedly threatening plaintiffs with adverse consequences for questioning her. Defendant's refusal to communicate and her attempt to bypass the Trust's provisions violated her duties as trustee. Because plaintiffs' litigation remedied those violations and enhanced the Trust's value by obtaining rent from defendant, the probate court did not clearly err by finding that attorney fees were appropriate and did not abuse its discretion by awarding those fees.

## VII. CONCLUSION

We agree with defendant that this case should have been commenced as a proceeding by petition rather than as a civil action by complaint. But that error was procedural, not jurisdictional, and it did not deprive defendant of due process because she received notice and a meaningful opportunity to respond but chose not to do so. Defendant's remaining arguments do not establish error requiring reversal. We therefore affirm. Plaintiffs, as the prevailing parties, may tax costs, which shall be borne by defendant alone because Martinchek did not participate in this appeal. MCR 7.219(A).

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney

-14-